IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
HARRISON DIVISION

KENNY M. SMITH                                                          PLAINTIFF

V.                              NO. 12-3004

MICHAEL J. ASTRUE,
Commissioner of the Social Security Administration            DEFENDANT

### MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

Plaintiff, Kenny M. Smith, brings this action pursuant to 42 U.S.C. § 405(g), seeking

judicial review of a decision of the Commissioner of the Social Security Administration

(Commissioner) denying his claims for a period of disability and disability insurance benefits

(DIB) and supplemental security income (SSI) benefits under the provisions of Titles II and XVI

of the Social Security Act (Act).  In this judicial review, the Court must determine whether there

is substantial evidence in the administrative record to support the Commissioner's decision.  See

42 U.S.C. § 405(g).

I.      **Procedural Background:**

Plaintiff filed his applications for DIB and SSI on September 11, 2008, alleging an

inability to work since July 17, 2007, due to "Tendonitis in arm/severe pain in arm, shoulder,

neck worse in left shoulder and rt elbow tendonitis, emphysema, stomach problems."  (Tr. 18,

661-664, 666).  An administrative hearing was held on April 28, 2010, at which Plaintiff

appeared with counsel and testified.  (Tr. 1265-1303).  On June 24, 2010, a written decision was

entered wherein the ALJ determined that Plaintiff was not disabled.  (Tr. 518-536).

On September 29, 2010, the Appeals Council remanded the matter to the ALJ for

-1-

resolution of certain issues.  (Tr. 538).  Additional medical records were obtained, and another

hearing was held on March 9, 2011.  (Tr. 1304-1339).

By written decision dated September 7, 2011, the ALJ found Plaintiff had the following

severe impairments: osteoarthritis/degenerative disk disease of the thoracolumbar[1] spine,

cervicalgia, bilateral shoulder impingement syndrome and right lateral epicondylitis[2] status post

surgery, left carpal tunnel syndrome, major depressive disorder, generalized anxiety disorder,

adjustment disorder with depressed mood and anxiety, and marijuana dependence/abuse.  (Tr.

20-21).  However, after reviewing all of the evidence presented, he determined that Plaintiff's

impairments did not meet or equal the level of severity of any impairment listed in the Listing

of Impairments found in Appendix I, Subpart P, Regulation No. 4.  (Tr. 21).  The ALJ found that

Plaintiff had the residual functional capacity (RFC) to:

> perform light work as defined in 20 CFR 404.1567(b) and 416.967(b)
> except the claimant cannot climb ladders, ropes, or scaffolds; cannot
> perform overhead work; can frequently, but not constantly, reach in all
> other directions; and cannot perform rapid repetitive flexion-extension of
> the left wrist. Further, the claimant is limited to work involving simple
> non-complex instructions, using little judgment, which are routine and
> repetitive, and which can be learned by rote with few variables.   In
> addition, he needs concrete, direct, and specific supervision, with work
> goals set for him, and he is limited to routine but superficial interpersonal
> contact.

(Tr. 23-24).  With the help of a vocational expert (VE), the ALJ found that Plaintiff was unable

to perform any past work, but that there were other jobs Plaintiff could perform, such as

production worker (bench assembler) and waiter/waitress.  (Tr. 30).

---

[1]Thoracolumbar - Relating to the thoracic and lumbar portions of the vertebral column.  Stedman's Medical Dictionary 1982 (28th ed. 2006).

[2]Epicondylitis - Inflammation of an epicondyle.
Epcondyle - - A projection from a long bone near the articular extremity above or upon the condyle.  Id. at 653

Plaintiff then requested a review of the hearing decision by the Appeals Council, which denied that request on November 9, 2011. (Tr. 8-11). Subsequently, Plaintiff filed this action. (Doc. 1). Both parties have filed briefs and this case is before the undersigned for report and recommendation. (Docs. 10, 12).

## II.    Evidence Presented:

The transcript in this matter consists of 1,339 pages, all of which have been reviewed. It is noteworthy that a substantial number of pages consists of VA medical records, many of which are duplicative. In addition, a good number of the pages relate to Plaintiff's medical condition between 2001 and July 17, 2007, the alleged onset date.[3]

Plaintiff was born in 1963 and received his GED. (Tr. 661, 671). Prior to the alleged onset date, beginning in 2001, the records reflect that Plaintiff received treatment for pain in his shoulders and right elbow. (Tr. 112-120, 122-139, 147-156, 158-171, 183-196, 199-204, 207-210-211, 214-215, 217-220, 230, 232, 238-239, 241, 244-245, 247, 248-249, 251, 254, 256-257, 260, 266-267, 272, 277-279, 281-296, 299, 302, 305, 308-310, 312-314, 318-329, 333-347, 353-355, 359, 361, 366, 369, 371-372, 374-375, 381-383, 387, 397-398, 400, 402, 407, 411, 413-416, 418-420, 428, 434-437, 442, 444-445, 449, 453, 455, 461-462, 466-467, 470-471, 482-485, 487, 498, 769-70, 787, 816, 819, 823, 830-831, 833-836, 896, 940, 943, 948-949, 965, 1237-1264).

On September 12, 2007, VA records reflect that Plaintiff reported increasing depression secondary to a recent denial of Social Security benefits, and wanted to alter his anti-depression medication. (Tr. 816). On November 14, 2007, Plaintiff reported to the VA that "I'm doing

---

[3]The Court notes that an ALJ rendered an unfavorable decision on July 16, 2007, on a previous Social Security application filed by Plaintiff, and on October 5, 2007, the Appeals Council denied the request for review. (Tr. 42-53, 36-38).

AO72A
(Rev. 8/82)

alright." (Tr. 813).  Plaintiff also promoted cigarette use (1.5-2 packs per day for 30+ years) and

daily marijuana use.  (Tr. 813).  The diagnostic impression at that time was:

| | |
|---|---|
| Axis I: | Adjustment disorder with depressed mood and anxiety, chronic, THC dependence |
| Axis II: | deferred |
| Axis III: | HTN, chronic pain |
| Axis IV: | Primary, financial, edu |
| Axis V: | GAF 51 |

(Tr. 814).  Plaintiff also promoted adequate response to Prozac with minimal side effects.  (Tr.

814).  Marijuana and nicotine abstinence were encouraged.  (Tr. 815).

On February 5, 2008, Plaintiff complained to the VA of experiencing crying spells daily

for the previous two weeks.  (Tr. 805, 929).  On June 4, 2008, Plaintiff requested medication for

bursitis in both shoulders, and complained that he was having difficulty moving his arms.  (Tr.

803).  He stated that the prescribed Ibuprofen was not helping.  A June 5, 2008 VA report

indicated that Plaintiff had been working on his house, remodeling, working overhead, and that

his shoulder pain had exacerbated.  (Tr. 799).  Plaintiff was unable to lift both of his arms

overhead.  (Tr. 799).  X-ray views of the shoulders indicated no acute fracture or dislocation.

(Tr. 769).

On July 21, 2008, in a VA report, it was noted that Plaintiff was taking Hydrocodone,

with good pain relief, and that Plaintiff walked with his head forward with rounded shoulders.

(Tr. 778).  Cervical spine x-rays indicated a normal cervical spine.  (Tr. 768).  Plaintiff

participated  in physical therapy, and on September 4, 2008, it was reported that he completed

12 visits and had made very little progress.  (Tr. 748).

On October 1, 2008, Plaintiff requested from VA a refill on his Hydrocodone.  (Tr. 789).

-4-

It was noted that Plaintiff became very defensive and agitated when questioned about his pain condition and level of pain and who last prescribed the medication. (Tr. 789). In another VA Progress Note dated October 1, 2008, Plaintiff complained that "All kind of things have been going on - medicine they gave me wasn't working so I quit taking. I can't sleep and things are all messed up." (Tr. 790). Plaintiff reported anger regarding a problem with his truck during the summer, and that he and a teenager had a verbal altercation. Plaintiff also reported wanting to hit a woman who yelled at him for leaning on her boyfriend's car. (Tr. 790). At that visit to the VA, Plaintiff reported that he had not had any alcohol or marijuana use for the past year, although he was still smoking cigarettes. (Tr. 791). Plaintiff was diagnosed with:

| | |
|---|---|
| Axis I: | General Anxiety Disorder, Major Depressive Disorder, Recurrent, Marijuana Dependence in remission |
| Axis II: | Deferred |
| Axis III: | Arthralgia, chronic joint pain |
| Axis IV: | Primary support, economic, social environment |
| Axis V: | 45 |

(Tr. 793). On October 24, 2008, Plaintiff complained that his medication caused bad gas, and he stopped taking it after two weeks. (Tr. 907). Plaintiff was also having new onset of lower back, groin and abdominal pain, after lifting heavy objects earlier that week. (Tr. 907). The diagnosis was the same as the previous one. (Tr. 909).

An October 27, 2008 VA Health Summary indicates that Plaintiff telephoned with concerns over potential side effects of Mirtazapine, complaining that he did not wish to try this medication due to possible weight gain. (Tr. 904). On November 24, 2008, MRI results of the left shoulder were discussed with Plaintiff, and the impression was:

-5-

    1.  Infraspinatus[4] tendinosis
    2.  Acomioclavicular arthrosis.[5]  Referral to ortho for evaluation

(Tr. 912).

On December 1, 2008, a General Physical Examination was conducted by Dr. Shannon H. Brownfield.  (Tr. 848-853).  Dr. Brownfield noted that Plaintiff smoked one pack of cigarettes per day, and that the range of motion in his extremities were all normal except for his left shoulder, which was 135 degrees instead of 150 degrees.  (Tr. 848, 850).  Cervical spine flexion was 0-45 degrees (normal is 0-50 degrees); extension was 0-45 degrees (normal is 0-60 degrees; and rotation was 0-60 on the right and 0-75 on the left.  (Tr. 850).  Plaintiff's limb function and gait/coordination were noted to be normal.  (Tr. 851).  Dr. Brownfield found that Plaintiff had moderate limitations using his right upper extremity with respect to reaching overhead, and moderate limitation in prolonged position/moving neck.  (Tr. 852).

On December 3, 2008, upon exam by Dr. Ashley S. Ross, orthopedic staff surgeon at the VA, Plaintiff had essentially full range of shoulder motion with complaints of pain at full abduction, internal, and external rotations.  (Tr. 901).  It was noted that the July 2006 MRI of the right shoulder revealed mild bursitis, and the November 2008 MRI of the left shoulder reflected infraspinatus tendinosis and acromioclavicular arthrosis.  (Tr. 901).  It was Dr. Ross' opinion that Plaintiff had:

    1.  Probably some impingement syndrome left shoulder with tendonitis, infraspinatus, and AC joint arthritis.
    2.  Mild tendinosis of the right rotator cuff.

(Tr. 901).

---

[4]Infraspinatus -  - Of shoulder joint, the tendon of which contributes to the formation of the rotator cuff... <u>Id.</u> at1245.

[5]Arthrosis - Degenerative joint changes.  <u>Id.</u> at 162

-6-

On December 5, 2008, non-examining consultant, Dr. Ronald Crow, completed a Physical RFC Assessment. (Tr. 854-861). Dr. Crow found that the medical records supported manipulative limitations, in that Plaintiff was limited in reaching all directions (including overhead). (Tr. 857, 861).

On December 8, 2008, Dan Donahue, Ph.D., completed a Mental RFC Assessment and Psychiatric Review Technique form. (Tr. 868-871, 872-885). Dr. Donahue found that Plaintiff had a moderate degree of limitation in restriction of activities of daily living, difficulties in maintaining social functioning, and difficulties in maintaining concentration, persistence, or pace. (Tr. 882). He saw no evidence of a marked and severe mental disorder, and concluded that Plaintiff appeared to have moderate symptoms of depression and anxiety, partially controlled with medications. (Tr. 884). He believed Plaintiff was capable of performing semiskilled work. (Tr. 884).

On January 26, 2009, a VA report indicated that Plaintiff continued to have pain in both of his shoulders. (Tr. 1068). On February 23, 2009, a VA report indicated that on exam, Plaintiff had a full range of shoulder motion without seemingly much discomfort, although he complained of slight discomfort at the extreme of all planes. (Tr. 1004). The MRI of the left shoulder demonstrated some AC arthritis, but not much else. It was the opinion of the examining doctor that Plaintiff had:

1. Rotator cuff tendinitis probably secondary to impingement syndrome
2. Lateral epicondylitis.

(Tr. 1004).

On February 25, 2009, Plaintiff reported no new problems to the VA. (Tr. 1059). On

-7-

March 19, 2009, Plaintiff was seen by Dr. Laura Hughes, staff surgeon at the VA, because he felt that he had exhausted all conservative treatment, and that he had some numbness and tingling in the thumb, index finger and middle finger on his left hand, although it was occasional and did not hurt him very much. (Tr. 1001). On exam, he was found to have full forward flexion of both shoulders, full abduction of both shoulders, mild discomfort at range of motion was 90 degrees and above in abduction and forward flexion. He was noted to have excellent muscle development with no atrophy. (Tr. 1001). There was mild discomfort to palpation over the ACT joints bilaterally, and motor strength testing was 5/5 in all muscle groups. The only really impressive clinical finding was that supraspinatus testing bilaterally was markedly positive. (Tr. 1002). X-rays on both shoulders did not show any significant glonohumeral DJD, and Dr. Hughes did not see any significant AC joint arthrosis. (Tr. 1002). Dr. Hughes noted that with regard to the right epicondylitis, Plaintiff definitely had tenderness to palpation over the origin of the right epicondyle with pain with dorsiflexion of the wrist. (Tr. 1002). The impression was bilateral impingement syndrome and right lateral epicondylitis. (Tr. 1002). Dr. Hughes found it would be reasonable to perform debridement of Plaintiff's lateral epicondylitis in conjunction with a diagnostic arthroscopy and subacromial decompression on the right shoulder. (Tr. 1002).

The MRI of Plaintiff's right shoulder, conducted on March 20, 2009, revealed:

1. Excess fluid in the biceps tendon sheath. Rule out tenosynovitis
2. Capsular thickening possibly representing capsulitis in the proper setting.
3. NO evidence of rotator cuff tear or tendinosis

(Tr. 1054).

On March 25, 2009, Plaintiff indicated he was ready to quit smoking and requested

-8-

Nicotine patches.  (Tr. 1053).  On May 11, 2009, Dr. Sarkis M. Nazarian, neurologist at the VA, found that Plaintiff had findings consistent with bilateral median nerve neuropathy at the wrist (carpal tunnel syndrome) severe in degree on the left and mild on the right.  (Tr. 990).  On May 20, 2009, Plaintiff reported to Dr. Hughes that his carpal tunnel syndrome on the right was not bothersome to him and his right shoulder and elbow pain were unrelated to the carpal tunnel syndrome.  He wanted to pursue pain relief for his right shoulder and right elbow.  (Tr. 1047). Dr. Hughes therefore scheduled right shoulder arthroscopy and debridement of the right lateral epicondylitis.  (Tr. 1047).

On June 15, 2009, the following surgical procedures were performed on Plaintiff by Dr. James McCoy:

1. Open lateral epicondyle release and debridement[6]
2. Diagnostic arthroscopy right shoulder
3. Subacromial decompression right shoulder

(Tr. 1069).  On June 30, 2009, Dr. McCoy reported that it looked like Plaintiff was doing better. (Tr. 1007).  On July 9, 2009, Dr. Mark S. Bailey, of the VA, reported that Plaintiff was doing very well, and that he had full range of motion and very minimal pain, "as most of his pain is at his elbow." (Tr. 1006).  On exam, Plaintiff had full range of motion without pain of his shoulder and his elbow.  He had full flexion and extension, he was neurovascularly intact right lower extremity, he had some pain during the extension of his wrist up in the elbow, and other than that, he was doing well.  (Tr. 1006).

On August 4, 2009, Plaintiff reported to the VA that his pain was worse since his surgery, and reported pain when he lifted his arm above his head or put his arm behind him.  (Tr. 1124).

---

[6]Debridement - Excision of devitalized tissue and foreign matter from a wound.  Id.  at 496.

On August 25, 2009, the VA reported that Plaintiff presented himself, saying that he was much worse, with feelings of instability in his right shoulder, as well as elbow pain, as well as left shoulder pain that was continuing.  (Tr. 1121).  On exam, he had good bilateral grip strength, was tender to palpation with a hard spot about his right lateral epicondyle of his elbow, and he still had some tenderness about his acromioclavicular joint bilateral shoulders, but no gross instability was present.  (Tr. 1121).

A letter dated August 28, 2009 was written by Melinda Fair, APN, FPMHNP-BC, CAVHS Mental Health Clinic, of the VA.  In the letter, Ms. Fair diagnosed Plaintiff as follows:

Axis I:     General Anxiety Disorder, Major Depressive Disorder, Recurrent, Marijuana Dependence in remission
Axis II:    Deferred
Axis III:   Arthralgia, chronic joint pain
Axis IV:    Primary support, economic, social environment
Axis V:     45

(Tr. 1094). She also reported that chronic pain had interfered with his ability to sleep at night and function during the day.  (Tr. 1094).

On September 3, 2009, Plaintiff called the VA stating that he would like to try Mirtazapine for depression/anxiety.  (Tr. 1120).  He stated that Trazodone was helpful for sleep but that he continued to experience day time anxiety/irritability.  (Tr. 1120).

On October 5, 2009, the impression from a MRI C/spine without contrast was:

Mild degenerative changes of the cervical spine with small posterior disc osteophyte complexes.  There is no central canal stenosis or abnormal cord signal.  There is bilateral neural foraminal narrowing throughout the cervical spine as detailed above, which is mild to moderate on the right at C4-5 and C5-6.

(Tr. 1101).

-10-

Ms. Fair completed a Medical Assessment of Ability to do Work-Related Activities (Mental) on October 6, 2009. (Tr. 1096). In the assessment, Ms. Fair found that: 1) Plaintiff had poor/none ability to relate to co-workers; deal with the public; and interact with supervisors; 2) Plaintiff had fair ability to follow work rules; use judgment; deal with work stresses and maintain attention/concentration; 3) Plaintiff had good ability to function independently; 4) Plaintiff had "fair" ability to understand, remember and carry out complex job instructions; understand, remember and carry out detailed, but not complex, job instructions; understand, remember and carry out simple job instruction; 5) Plaintiff had poor/none ability to relate predictably in social situations; and 6) Plaintiff had fair ability to maintain personal appearance, behave in an emotionally stable manner, and demonstrate reliability. (Tr. 1096-1097).

On October 6, 2009, Plaintiff reported to the VA that he had improved mood and decreased irritability with Mirtazapine RX, and improved sleep with Trazodone. (Tr. 1113). The diagnostic impression at that time was:

| | |
|---|---|
| Axis I: | General Anxiety Disorder, Major Depressive Disorder, Recurrent, Marijuana Dependence in remission |
| Axis II: | Deferred |
| Axis III: | Arthralgia, chronic joint pain |
| Axis IV: | Primary support, economic, social environment |
| Axis V: | 48 |

(Tr. 1115).

On December 10, 2009, Plaintiff complained to the VA of bilateral shoulder pain. It was noted that he had pretty good range of motion, but he was having pain when he tried to do any activities above his head. (Tr. 1109). He was also having problems when he threw something or used a hammer on his right arm. He reported that the right shoulder improved after he had

-11-

surgery, but that the elbow had not really improved and possibly had gotten worse.  (Tr. 1109).

Plaintiff had good range of motion bilaterally in his shoulder, and full active range of motion.

(Tr. 1109).  He had five out of five strength in his bilateral upper extremities, and had some

impingement signs of his right and left shoulder.  (Tr. 1109).  Plaintiff was assessed with

impingement syndrome left shoulder, neuroforaminal narrowing multiple levels cervical spine,

and continued tendonitis of his right elbow.  (Tr. 1109).  The doctor did not believe there was

anything to be done, but did believe that he would benefit from subacromial decompression on

his left shoulder, as he improved on the right side when he had it done.  (Tr. 1109).

An MRI of Plaintiff's left shoulder, done on February 3, 2010, revealed:

1.  Subacromial/subdeltoid bursitis
2.  No evidence of rotator cuff tear.

(Tr. 1099).

On March 30, 2010, Plaintiff complained to the VA of stress and sadness due to recent

deaths of close friend and family member.  (Tr. 11040.  He otherwise was doing "okay," and

believed the medications were helpful for mood and sleep and wanted to continue taking them.

(Tr. 1104).  At that time, he was still smoking 1 pack of cigarettes per day.  (Tr. 1105). The

diagnosis then was:

| | |
|---|---|
| Axis I: | General Anxiety Disorder, Major Depressive Disorder, Recurrent, Marijuana Dependence in remission |
| Axis II: | Deferred |
| Axis III: | Arthralgia, chronic joint pain |
| Axis IV: | Primary support, economic, social environment |
| Axis V: | 45 |

(Tr. 1215).  As of March 17, 2010, Plaintiff was taking Mirtazapine for anxiety/depression;

Trazodone for sleep; Ranitidine for his stomach, and Naproxen for inflammation/pain. (Tr. 729).

-12-

On May 3, 2010, surgery was performed on Plaintiff's left shoulder by Dr. Jason P. McConnell. (Tr. 1218). On May 11, 2010, Dr. McCoy advised Plaintiff that he could start using his arm, limited only by his pain, and felt that Plaintiff should do quite well. (Tr. 1166).

On May 21, 2010, Plaintiff's complained to the VA that he had "been kind of irritable." (Tr. 1162). He was no longer taking Trazadone for sleep. Plaintiff reported that he was smoking marijuana, occasionally. (Tr. 1163). He was still smoking about a pack of cigarettes per day and declined treatment for smoking cessation. (Tr. 1163). He was then diagnosed as follows:

| | |
|---|---|
| Axis I: | General Anxiety Disorder, Major Depressive Disorder, Recurrent, Marijuana Dependence in partial remission, Tobacco Use Disorder |
| Axis II: | Deferred |
| Axis III: | Arthralgia, chronic joint pain |
| Axis IV: | Primary support, economic, social environment |
| Axis V: | 52 |

(Tr. 1164). Plaintiff was agreeable to increasing the Mirtazapine to 30 mg daily, and began a trial of Hydroxyzine as needed for anxiety. (Tr. 1164).

On June 8, 2010, Plaintiff reported to the VA that he had been using his arm as tolerated, but not doing any formal therapy. (Tr. 1161). He reported having no significant pain, but noted that his shoulder was stiff. (Tr. 1161).

On October 26, 2010, Plaintiff complained to the VA of a depressed mood. He indicated that he stopped taking the Mirtazapine because of weight gain. (Tr. 1157). He was still smoking cigarettes, and stated that his bursitis was better, but his shoulder pain was bad. (Tr. 1158). Plaintiff was agreeable to trial of Sertraline for his mood. (Tr. 1158).

On November 24, 2010, Plaintiff advised the VA that he would like to continue the Sertraline medication despite having occasional diarrhea. (Tr. 1160). Plaintiff indicated that

-13-

he forgot to take his Sertraline half the time and that it gave him diarrhea. (Tr. 1155). At the hearing before the ALJ on March 9, 2011, Plaintiff indicated that he was still using marijuana. (Tr. 1325).

Plaintiff reported to the VA that he was "doing about the same" on March 17, 2011, since he stopped taking Sertraline because it caused diarrhea. Plaintiff reported continued irritability/depression during the day since he stopped taking Sertraline, due to the side effects. He was agreeable to trying Paroxetine for mood/anxiety and a low dose Trazodone as needed for anxiety. (Tr. 1153).

On April 1, 2011, another General Physical Examination was conducted by Dr. Brownfield. (Tr. 1226-1231). Dr. Brownfield found that Plaintiff had moderate/severe use of his right upper extremity, had moderate limitation in stooping/lifting/prolonged position, and moderate limitation on exertion. (Tr. 1230).

On April 7, 2011, Dr. Nancy A. Bunting, Ph.D. completed an Intellectual Assessment and Adaptive Functioning. (Tr. 1232-1236). She reported that Plaintiff had a full scale IQ of 81. (Tr. 1232). He reported that the Trazodone helped "a little," and that he took Paxil regularly, had no problems with it, and since he had only been on it for one week, he could not tell if it was helping. (Tr. 1232). Dr. Bunting reported there were no obvious indications of pain. (Tr. 1234). Plaintiff also reported no concerns with his memory. (Tr. 1234). Dr. Bunting diagnosed Plaintiff as follows:

| | |
|---|---|
| Axis I: | Adjustment disorder with depressed mood |
| Axis II: | No diagnosis |
| Axis III: | Chronic pain |
| Axis IV: | Moderate (with support from wife) |
| Axis V: | GAF 50-60 |

-14-

(Tr. 1235). Dr. Bunting noted that Plaintiff was very reluctant to talk about any activities he did at home, so it was very hard to judge how much his pain might be disrupting his activities. (Tr. 1235). She further noted that "it's hard to believe that 2-3 pots of coffee and a 6-pack of cola might not be affecting his mood and sleep." (Tr. 1235). She found him able to communicate and interact in a socially adequate, intelligible and effective manner, and had the capacity to cope with the typical mental/cognitive demands of basic work-like tasks; had some ability to attend and sustain concentration on basic tasks; was able to sustain his persistence during the testing session and interview which focused on himself; and was able to complete work-like tasks within an acceptable time frame if his fatigue and pain did not interfere. (Tr. 1236). Dr. Bunting noted that Plaintiff appeared to be guarded in the interview and appeared to be a reluctant informant. (Tr. 1236).

### III.   Applicable Law:

This Court's role is to determine whether the Commissioner's findings are supported by substantial evidence on the record as a whole. Ramirez v. Barnhart, 292 F. 3d 576, 583 (8th Cir. 2002). Substantial evidence is less than a preponderance but it is enough that a reasonable mind would find it adequate to support the Commissioner's decision. The ALJ's decision must be affirmed if the record contains substantial evidence to support it. Edwards v. Barnhart, 314 F. 3d 964, 966 (8th Cir. 2003). As long as there is substantial evidence in the record that supports the Commissioner's decision, the Court may not reverse it simply because substantial evidence exists in the record that would have supported a contrary outcome, or because the Court would have decided the case differently. Haley v. Massanari, 258 F.3d 742, 747 (8th Cir. 2001). In other words, if after reviewing the record, it is possible to draw two inconsistent positions from

-15-

the evidence and one of those positions represents the findings of the ALJ, the decision of the ALJ must be affirmed.  Young v. Apfel, 221 F. 3d 1065, 1068 (8th Cir. 2000).

   It is well established that a claimant for Social Security disability benefits has the burden of proving his disability by establishing a physical or mental disability that has lasted at least one year and that prevents him from engaging in any substantial gainful activity.  Pearsall v. Massanari, 274 F. 3d 1211, 1217 (8th Cir. 2001); see also 42 U.S.C. §§423(d)(1)(A), 1382c(a)(3)(A).  The Act defines "physical or mental impairment" as "an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques."  42 U.S.C. §§423(d)(3), 1382(3)(D).  A Plaintiff must show that his disability, not simply his impairment, has lasted for at least twelve consecutive months.

   The Commissioner's regulations require him to apply a five-step sequential evaluation process to each claim for disability benefits: (1) whether the claimant had engaged in substantial gainful activity since filing his claim; (2) whether the claimant had a severe physical and/or mental impairment or combination of impairments; (3) whether the impairment(s) met or equaled an impairment in the listings; (4) whether the impairment(s) prevented the claimant from doing past relevant work; and (5) whether the claimant was able to perform other work in the national economy given his age, education, and experience.  See 20 C.F.R. §416.920.  Only if the final stage is reached does the fact finder consider the Plaintiff's age, education, and work experience in light of his residual functional capacity (RFC).  See McCoy v. Schneider, 683 F.2d 1138, 1141-42 (8th Cir. 1982);  20 C.F.R. §416.920.

**IV.    Discussion:**

-16-

A summary of Plaintiff's arguments on appeal indicate that Plaintiff contends that: 1) the ALJ erred at step two by finding that Plaintiff did not have severe carpal tunnel syndrome in her right wrist was not a severe impairment, or that Plaintiff's arthritis of the neck was not a severe impairment; and 2) the ALJ erred in the RFC assessment. (Doc. 12).

### A.    Severe Impairments:

An impairment is severe within the meaning of the regulations if it significantly limits an individual's ability to perform basic work activities.    20 C.F.R. §§ 1520(a)(4)ii), 416.920(a)(4)(ii).   An impairment or combination of impairments is not severe when medical and other evidence establish only a slight abnormality or a combination of slight abnormalities that would have no more than a minimal effect on an individual's ability to work.  20 C.F.R. § § 404.1521, 416.921.  The Supreme Court has adopted a "de minimis standard" with regard to the severity standard.  Hudson v. Bowen, 870 F.2d 1392, 1395 (8th Cri. 1989).

In this case, the ALJ concluded that Plaintiff's carpal tunnel syndrome of his right wrist was not severe.  He found that there was no indication in the medical evidence of record that it imposed more than minimal, if any, limitations on Plaintiff's ability to perform basic work activities.  (Tr. 21).  The ALJ referred to the May 2009 report where Plaintiff stated his right carpal tunnel syndrome was not bothersome, and that nerve conduction studies revealed only mild carpal tunnel syndrome on the right.  (Tr. 21).  The report the ALJ referenced is dated May 20, 2009, where Dr. Hughes noted that Plaintiff was insistent that his carpal tunnel syndrome on the right was not bothersome to him and that his right shoulder and elbow pain were unrelated to the carpal tunnel syndrome.  (Tr. 1047).  In fact, Dr. Hughes reported that Plaintiff did not want to have his carpal tunnel syndrome on either hand decompressed at that time, but wanted

-17-

the doctor to pursue pain relief for his right shoulder and elbow.  (Tr. 1047).

With respect to Plaintiff's neck pain, the ALJ noted that Plaintiff's treatment for back and neck pain had been only conservative and pharmacological in nature, and that there was no indication in the record that Plaintiff's treatment providers had recommended treatment beyond conservative measures.  (Tr. 25).  In addition, as indicated by Defendant, although a disability examiner reported that Plaintiff had moderate limitations with a prolonged position/moving of the neck, Plaintiff has failed to show that this limitation would significantly limit his ability to perform basic work activity.

Based upon the foregoing, as well as the reasons given in Defendant's well reasoned brief, the Court believes that there is substantial evidence to support the ALJ's findings with regard to Plaintiff's severe impairments.

**B.     RFC Assessment:**

RFC is the most a person can do despite that person's limitations.   20 C.F.R. §404.1545(a)(1).  It is assessed using all relevant evidence in the record.  Id.  This includes medical records, observations of treating physicians and others, and the claimant's own description of his limitations.  Guilliams v. Barnhart, 393 F.3d 798, 801 (8th Cir. 2005); Eichelberger v. Barnhart, 390 F.3d 584, 591 (8th Cir. 2004).  Limitations resulting from symptoms such as pain are also factored into the assessment.  20 C.F.R. § 404.1545(a)(3).  The Eighth Circuit has held that a "claimant's residual functional capacity is a medical question." Lauer v. Apfel, 245 F.3d 700, 704 (8th Cir. 2001).  Therefore, an ALJ's determination concerning a claimant's RFC must be supported by medical evidence that addresses the claimant's ability to function in the workplace." Lewis v. Barnhart, 353 F.3d 642, 646 (8th Cir.

-18-

2003).  "The ALJ is [also] required to set forth specifically a claimant's limitations and to determine how those limitations affect his RFC."  Id.

In the present case, the ALJ found that Plaintiff had the RFC to perform light work with certain limitations.  (Tr. 23-24).  In making this finding, the ALJ extensively discussed the medical opinions, the weight given such opinions, and Plaintiff's daily activities to support his findings.  He noted that the 2011 lumbar and thoracic spine x-rays revealed mild spurring and osteoarthritis of the lumbar spine and moderate to moderately severe degenerative disk disease, osteoarthritis of the lumbar spine and moderate to moderately severe degenerative disk disease, osteoarthritis, and spurring of the thoracic spine.  (Tr. 24).  The ALJ also noted the July 2008 cervical spine x-rays and the October 2009 cervical spine MRI, which revealed "mild" degenerative changes with small posterior osteophyte complexes and "mild" to "moderate" bilateral neural foraminal narrowing, with no evidence of central canal stenosis.  (Tr. 24-25). The ALJ discussed Dr. Shannon Brownfield's December 2008 examination and results, as well as her April 2011 findings.  (Tr. 25, 28).  The ALJ gave little weight to Dr. Brownfield's 2008 opinion, because he found it was not supported by the medical evidence of record, or by Plaintiff's activities.  (Tr. 28).  The ALJ gave great weight to Dr. Brownfield's 2011 report, because it was substantially supported by the record.  (Tr. 28).  The ALJ gave no weight to the assessment of Melinda Fair, APN, and gave specific reasons for doing so.  (Tr. 29).  The ALJ also stated that the strong suggestion in the record that Plaintiff was much more active and capable than he had indicated led him to conclude that Plaintiff's allegations regarding his limitations were not wholly credible.  (Tr. 27).  He noted that in June and July 2008, Plaintiff sought treatment for increased neck and shoulder pain which had worsened after he had been

-19-

"working on remodeling his home, an activity which his treatment provider noted included overhead activities and lifting."  (Tr. 27).  There is also evidence which brings into question Plaintiff's credibility.  For example, Plaintiff repeatedly told medical health providers at different times that he had not been using marijuana, but would later reveal that he was still using marijuana.  (Tr. 813. 791, 1288-1289, 1163, 1325).  In addition, in his RFC, the ALJ included limitations regarding Plaintiff's arms and hands, as well as dealing with the public.

Based upon the foregoing, and for the reasons given in Defendant's well-reasoned brief, the Court believes there is substantial evidence to support the ALJ's RFC findings, and that the ALJ gave an in-depth analysis of the reasons behind his RFC assessment.

## V.    Conclusion:

Based upon the foregoing, the Court recommends affirming the ALJ's decision, and dismissing Plaintiff's case with prejudice.  **The parties have fourteen days from receipt of the undersigned's report and recommendation in which to file written objections pursuant to 28 U.S.C. § 636(b)(1).  The failure to file timely objections may result in waiver of the right to appeal questions of fact.  The parties are reminded that objections must be both timely and specific to trigger de novo review by the district court.**

DATED this 31st day of January, 2013.


/s/ Erin L. Setser
HONORABLE ERIN L. SETSER
UNITED STATES MAGISTRATE JUDGE

-20-